86 C.C.P.A.(Patents)

**ROBIE v. NETHERLY et al.**

**Patent Appeal No. 5495.**

United States Court of Customs and Patent Appeals.

Jan. 5, 1949.

Rehearing Denied Feb. 25, 1949.

William H. Webb, of Pittsburgh, Pa., and Donald A. Gardiner, of Washington, D. C. (Smith, Michael & Gardiner, of Washington, D. C., and Stebbins, Blenko & Webb, of Pittsburgh, Pa., of counsel), for appellant.

Harold J. Kinney, of St. Paul, Minn. (Carpenter, Abbott, Coulter & Kinney, of St. Paul, Minn., of counsel), for appellees.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

JACKSON, Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners awarding to appellees priority of invention of the subject matter of a single count.

The interference involves an application of appellant, serial No. 469,232, filed December 16, 1942, for a patent for "Flexible Abrasive Articles" and assigned to The Carborundum Co. and stated to be a continuation-in-part of an application, serial No. 336, 212, filed May 20, 1940, which in turn is said to be a continuation-in-part of an application, serial No. 137,796, filed April 19, 1937. Appellant and others are joint applicants in the last two named applications.

The involved patent of appellees is No. 2,269,416, dated January 6, 1942, on an application filed May 20, 1941, as a continuation-in-part of an earlier application, serial No. 179,338, filed December 11, 1937. The latter application matured into patent No. 2,269,415 on January 6, 1942. Both patents of appellees are the property of Minnesota Mining & Manufacturing Co.

On April 12, 1943, appellant amended his application by copying claim 2 of the patent of appellees, No. 2,269,416. That date is more than one year after the date of the

patent and it may be noted that the involved application was originally filed more than four months subsequent to the issue date of the patent.

Both parties filed preliminary statements. Appellant alleged for his first written description, disclosure of his invention to others, and reduction of it to practice, a date of on or about December 15, 1936, and the exercise of reasonable diligence in adapting and perfecting the invention defined in the count from early in December 1936. Appellees alleged a first written description as early as September 24, 1936, disclosure of the invention to others, and reduction to practice in the summer or early fall of that year, a conception of the invention not earlier than the time of the written description and disclosure, and the exercise of reasonable diligence from September 1936.

The count, claim 2 of the involved application, reads as follows: "A coated abrasive article comprising abrasive grains secured to a backing by a plurality of coatings of bonding materials including a primary bonding coating and a sizing coating, said abrasive grains being positioned in said bonding coating in predetermined oriented relation to said backing and reinforced and substantially maintained in said predetermined position by said sizing coating, said bonding coating being of a material selected with respect to the material of said sizing coating such as to be substantially unsoftened and undissolved by the material of said sizing coating in fluid form, said binder or bonding coat comprising a silicate and said sizing coat comprising an organic resinous material."

The subject matter defined in the count relates to an abrasive article of the sandpaper type. That kind of article, generally speaking, is old in the art. It was also known, prior to the present invention, that abrasive particles or granules in oriented position —that is, so placed on a paper base and bound by a primary or making coat of adhesive so that the longest dimension of each granule is at about a right angle from its base—are exceedingly efficient for use as an abradant in sandpaper. Because the making coat adhesive did not hold the granules securely enough, it was a known practice to spread on an additional or sizing coat to further maintain the granules in an oriented position. In the making of sandpaper, as just set out, it was discovered that the second coating then in use, when applied, affected a softening of the first coating and that many of the granules became deviated from their oriented position. In order to correct that weakness, coatings containing certain materials were used so that the first coating would not become softened when the second coating was applied. In the instant invention the first coat is defined as "comprising a silicate" and the second coat as "comprising organic resinous material."

With the filing of his amendment copying claim 2 of the involved patent, appellant also filed an affidavit alleging that he had "made" the invention before the filing date of appellees, December 11, 1937. That claim in the amended application was finally rejected by the Primary Examiner for the reason that it had not been made within a year from the date of the patent. The Board of Appeals reversed that decision and the present interference was declared.

During the interlocutory period, appellees moved to dissolve the interference on the ground that appellant was barred from making the claim for the same reason given by the examiner in rejecting it. The Primary Examiner denied the motion because he stated that he was bound by the board's reversal of his former decision.

Appellant during the motion period filed a motion to shift the burden of proof, relying upon the previously filed applications of appellant and others hereinbefore mentioned. Subsequently appellees filed a motion to dismiss appellant's motion for the reason that appellant did not allege that in the earlier filed applications there was a basis from which the limitation of the count "predetermined oriented position" of the granules was to be found. Appellant filed no opposition and the motion to dismiss was granted.

Appellant took testimony and gave due notice of reliance upon the earlier applications at final hearing. Appellees took no testimony, and therefore were limited to their filing date for constructive reduction to practice.

The board held that appellant, although he was entitled to a date of conception of the invention as early as January 1937, did not prove a reduction to practice prior to the filing of appellees' application, May 20, 1941, and had failed to establish the necessary exercise of reasonable diligence. Accordingly award of priority was given to appellees.

The issues here are whether or not the board erred in refusing to hold that appellant is entitled to the benefit of the dates of the earlier filed applications, and whether or not it erred in holding that appellant failed to establish an actual reduction to practice prior to his filing date and to show diligence.

At the final hearing and here, counsel for appellant contended that he is entitled to prevail in view of the earlier applications in which he was a joint applicant.

It is admitted that the limitation of the count, "said abrasive grains being positioned in said bonding coating in predetermined oriented relation to said backing and reinforced and substantially maintained in said predetermined position by said sizing coating," is not expressly disclosed in the earlier applications upon which appellant relies. It is contended, however, that the limitation "predetermined oriented relation to said backing" is "at best vague and indefinite and open to no distinct interpretation" and that orientation of the grains "is not a characterizing feature of the count and imparts no patentability to it, for orientation of abrasive grains was old prior to any date to which either of the parties here is entitled."

■ With respect to the first contention, if we are to consider the limitation to be vague, indefinite and open to no distinct interpretation, we must conclude that the language is doubtful or ambiguous. By reason of such conclusion it would be our duty to examine the specification of the patent wherein the count originated. Robie v. Carlton, 171 F.2d 310, 36 C.C.P.A., Patents, —; Finch v. Dillenback, Jr., 121 F.2d 459, 28 C.C.P.A., Patents, 1171; Sherman v. Johnson, 117 F.2d 266, 28 C.C.P.A., Patents, 870; Neumair v. Malocsay, 77 F.2d 622, 22 C.C.P.A., Patents, 1349; Sweetland v. Cole,

53 F.2d 709, 19 C.C.P.A., Patents, 751; Steenstrup v. Morton, 58 App.D.C. 343, 30 F.2d 867.

■ It is clearly shown in the specification of appellees' patent that orientation of the grains means placing them on a bonded surface with the longest diameter of the grains approximately at right angles to the bond. Therefore, appellant's first contention, if considered as contended, is of no help to him. We agree with the board in holding that that limitation is clear, and requires no interpretation. It depicts a predetermined orientation of the deposited grains as against a random deposition thereof. The earlier applications, upon which appellant relies, disclose no predetermined orientation of grains, and therefore appellant may not avail himself of the earlier dates thereof.

■ With respect to appellant's second contention, it is only necessary to state that in an interference proceeding, express limitations in a count may not be disregarded. Saklatwalla v. Marburg, 172 F.2d 227, 36 C.C.P.A., Patents, —, and the many other cases therein cited.

■ In view of our conclusion that appellant failed to prove an actual reduction to practice before appellees' filing date and has not established the exercise of reasonable diligence from just prior to that date and up to the time appellant filed his application, it is not necessary to discuss the contention of appellees with respect to the action of the tribunals of the Patent Office in denying their motion to dissolve.

The record on behalf of appellant comprises his own deposition and those of several other witnesses, one of whom was appellant's assistant, two were in the research department of The Carborundum Co. of which appellant was the supervisor, another was employed in overseeing the manufacture of coated abrasive for that company, one was in charge of the testing of paper and cloth abrasives products, and the others merely identified the initials or signatures on certain exhibits.

It is unnecessary to detail the testimony of appellant and his witnesses or to describe the contents of the exhibits. It is sufficient to state that in our opinion appellant has

560

clearly established conception of the invention at least by as early as January 1937, as was held by the board.

Many grinding tests were made of abrasive paper formed into belts. It is conceivable that the paper of appellant, made in accordance with the limitations of the count, was incorporated in the belts for grinding tests, and was so tested. However, there is a gap in the proof because there is nothing to show that the abrasive paper used in the tests was known by those who made the belts and the tests to be the paper corresponding to the limitations of the count. Therefore, we are constrained to hold, as did the board, that no actual reduction to practice has been proved.

It is not disputed that appellees are entitled to the date of December 11, 1937, for a constructive reduction to practice. Appellant did not file his involved application until December 16, 1942, and at that time did not make the claim which is the count of this interference. We do not find that appellant has shown any activity from just before appellees' earliest filing date until appellant filed his application, as aforesaid. It was three months subsequent to his original filing date and after the patent of appellees had been issued for more than one year that he copied the claim which constitutes the count.

■ In their brief counsel for appellant seemed to rely principally upon their contention that appellant actually reduced the invention to practice in December 1936 or early in 1937. They also vigorously argued that appellant is entitled to a constructive reduction to practice in April 1937 when the application, serial No. 137796 was filed. They do not appear to stress other activities on the part of appellant in the exercise of diligence between his alleged reduction to practice between December 1936 or early in 1937 up to the time when he filed the application disclosing the making of abrasive paper in conformity with the limitations of the count. Seemingly it would appear that appellant was confident not only that he had actually reduced the invention to practice, but that he was entitled to a constructive reduction to practice as of the dates of the earlier applications in which he was a party. Those facts coupled with the delay of appellant in copying claim 2 of appellees' patent, hereinbefore referred to, for more than one year subsequent to the date upon which the patent of appellees issued, convinces us that there has been no proper showing of diligence. It was appellant's burden to prove priority of invention beyond a reasonable doubt. This he has not done.

For the reasons hereinbefore set out, the decision of the Board of Interference Examiners is affirmed.

Affirmed.